## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

JIMMY DEWAYNE MAY,                                          PETITIONER
ADC #163080

V.                        NO. 5:18-CV-00053-BSM-JTR

DEXTER PAYNE,[1] Director,
Arkansas Division of Correction                            RESPONDENT

## RECOMMENDED DISPOSITION

 The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller.  You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

## I.  Introduction

 On February 22, 2018, Petitioner Jimmy Dewayne May ("May") initiated this § 2254 habeas action. In his Petition, he alleges five ineffective assistance of counsel

---

[1] In a habeas action, the "Respondent" is "the person who has custody over [the petitioner]." § 2254 Rule 2(a).  Thus, Dexter Payne, the current Director of the Arkansas Department of Correction's Division of Correction, should be substituted as the Respondent pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to update the docket to reflect this change.

claims; one claim of error by the trial court; and one claim of error by the Arkansas Court of Appeals.  *Docs. 2 and 3*.

On April 1, 2019, Respondent filed a Response, arguing that May's habeas claims are procedurally defaulted, fail on the merits, or are not cognizable under § 2254.  *Doc. 35*.  On May 21, 2019, May filed a Reply. *Doc. 34*.

Before addressing any of the parties' arguments, it is important to understand the facts giving rise to May's habeas claims.[2]

On the afternoon of June 13, 2015, Fort Smith Police Officer Jeffrey Taylor, Jr. ("Officer Taylor") was dispatched to The Tackle Box, a sporting goods store, to investigate a call that a male and female "had been [in the store] for approximately two hours[,] . . . had tried to sell a gun[,] . . . were acting very strange[,]" but had recently left the store and were now outside sitting in a black Ford pickup truck. Suppression Hearing Testimony of Officer Taylor, *May v. State*, Ark. Ct. App. No. CR-16-241, *Tr. Rec. at 122-123*.

Officer Taylor located the truck and pulled his patrol car behind it, effectively stopping the driver from leaving.  Officer Taylor walked up to the driver's window and observed the driver and the female passenger acting "very nervous."  *Id. at 122-*

---

[2]  In addition to the records provided by May and the Respondent, the Court also has reviewed the two-volume record of the trial court proceedings, which is available to the public at the Arkansas Supreme Court Clerk's Office. *See May v. State*, Ark. Ct. App. Case No. CR-16-241 (filed March 21, 2016).

*125*. The driver was "sweating a lot[,] shaking violently, really shaking. And his voice was really shaking." *Id. at 125*. Officer Taylor asked both the driver and passenger "what they were doing in there [The Tackle Box] and why would we get a call . . . that they were acting strangely." *Id*. He requested the driver and passenger to provide identification and then returned to his patrol car to check for arrest warrants. *Id. at 125-126*.

The driver of the truck, May, had an active warrant for failing to appear on a state district court summons. *Id. at 126*. After Officer Taylor arrested May on the active warrant, he testified that May *consented* to the search of his truck:

> I asked him if he had anything illegal in the vehicle after I had taken him into custody. He said he did not. I asked him if he had a problem with me searching the vehicle. He said he did not.

*Id. at 127, 213*.

Inside the truck, Officer Taylor and two other officers found two and a half grams of methamphetamine, a glass smoking pipe, several unused syringes, a scale, a 9mm pistol, and a roll of twenty-six $100 bills. *Id. at 128*. May later admitted that all of the items seized from the truck belonged to him. *Id. at 230*.

May was charged in Sebastian County Circuit Court with simultaneous possession of drugs and firearms, possession of drug paraphernalia, possession of methamphetamine, and felon in possession of a firearm.[3]

May's trial counsel, Rita Watkins ("Ms. Watkins") filed a Motion to Suppress all of the evidence found during the search of May's truck. *Id. at 21-22*. On January 13, 2016, the trial court conducted a suppression hearing. *Id. at 93-146*. Ms. Watkins argued that, based on Officer Taylor's testimony during the suppression hearing, he had neither a reasonable suspicion to initiate the stop of May's vehicle nor probable cause to conduct the search. *Id. at 142*. According to Ms. Watkins, this made the search "unlawful and all items seized should be suppressed under the 'fruit of the poisonous tree doctrine.'" *Id. at 21-22*.

During and after the suppression hearing, Ms. Watkins made *no arguments* challenging: (1) the constitutionality of May's arrest on the outstanding arrest warrant; or (2) the truthfulness of Officer Taylor's testimony that, after May's arrest, he *consented* to the search of the truck. On January 19, 2016, the trial court summarily denied the motion to suppress. *Id. at 28*.

On January 29, 2016, Ms. Watkins filed a Motion to Reconsider. She reiterated her argument that, because "Officer Taylor failed to provide a specific,

---

[3] The felon in possession of firearm charge was severed prior to May's trial. *May*, Ark. Ct. App. Case No. CR-16-241, *Tr. Trans. at 39*.

particularized, and articulable reason indicating that Mr. May may be involved in criminal activity," he did not have probable cause to search May's truck. *Id. at 34*.

On February 1, 2016, the trial court denied the Motion, but made a new alternative finding to uphold the constitutionality of the search:

> Assuming, *arguendo*, Defendant is correct in arguing his original detention was not authorized, his motion must nevertheless fail. The Court notes the search took place only after officers were advised of an active warrant for Defendant's arrest. There is nothing in the record which suggests the search would have occurred absent this discovery.

*Id. at 48*.  Under this new theory, the constitutionality of Officer Taylor's search no longer turned on whether he had "reasonable suspicion" to stop May or whether his questioning of him created "probable cause":

> [T]here was an independent and intervening factor [the discovery of the arrest warrant] which led to Defendant's arrest and the subsequent [consensual] search, thereby removing any [constitutional] taint that may have existed [from the arguably improper *Terry* stop and Officer Taylor's suggestion that May's "demeanor" and "body language" created probable cause].

*Id*.

May proceeded to trial, and, on February 3, 2016, the jury convicted him of Simultaneous Possession of Drugs and Firearms, Possession of Drug Paraphernalia, and Possession of Methamphetamine. *Doc. 13-1 at 1-2*.  As a habitual offender, May was sentenced to seventeen years for Simultaneous Possession of Drugs and Firearms, seven years for Possession of Drug Paraphernalia, and six years for

Possession of Methamphetamine. *Id*. All of those sentences were imposed *consecutively*.

On direct appeal to the Arkansas Court of Appeals, May's appellate counsel, David Dunagin ("Mr. Dunagin"), argued that the trial court erred in denying May's Motion to Suppress because Officer Taylor lacked probable cause to search May's truck. *May v. State*, 2016 Ark. App. 605, 4-5, 509 S.W.3d 14, 16-17. Mr. Dunagin did *not* challenge the trial court's alternative finding that it ultimately relied on to uphold the constitutionality of the search.

On December 14, 2016, the Court affirmed May's convictions based on the trial court's finding that Officer Taylor's "discovery of the arrest warrant [on May] was an independent and intervening factor that led to his arrest and the subsequent [consensual] search [of May's vehicle], thereby removing any [constitutional] taint that may have existed." *May*, 2016 Ark. App. 605, at 4-5, 509 S.W.3d at 17 (citations omitted). According to the Court, "[w]hen an appellant [like May] fails to attack a circuit court's independent, alternative basis for its ruling, we will not reverse." *Id.*

The Arkansas Court of Appeals issued its Mandate affirming May's conviction on January 4, 2017. May had sixty days to file his Rule 37 Petition. *See* Ark. R. Crim. P. 37.2(c)(ii); Ark. R. Crim. P. 1.4.

6

On February 16, 2017, well before the March 6, 2017 filing deadline, May mailed his *pro se* Rule 37 Petition to the Sebastian County Circuit Court.[4]  *Doc. 13-3*.  In that pleading, May asserted ineffective assistance of counsel claims against both Ms. Watkins *and* Mr. Dunagin.  *Doc. 13-3 at 8-9*; *Doc. 20 at 3*.  As to Ms. Watkins, he made only a conclusory allegation that she was constitutionally ineffective, without explaining how or providing *any facts* to support that claim.  As to Mr. Dunagin, May specifically alleged that he provided ineffective assistance by failing to challenge the trial court's "alternative finding," which the Arkansas Court of Appeals relied on to affirm May's conviction. *Doc. 13-3 at 6*.[5]

In a letter, dated February 28, 2017, a Sebastian County Clerk wrote May and advised him that she was rejecting and returning his *timely* Rule 37 Petition, because

---

[4] Under Arkansas law, "a [Rule 37] petition filed *pro se* by a person confined in a correctional or detention facility that is not timely . . . shall be deemed filed on the date of its deposit in the facility's legal mail system" if several conditions are satisfied.  Ark. R. Crim. P. 37.2(g).  This rule, patterned after the federal "prison mailbox rule," allows a Rule 37 Petition to be deemed filed on the date the prisoner deposits it into the prison's "legal mail system" with first-class postage prepaid, provided that the petition contains a notarized or attested statement indicating the petition complied with all of the steps necessary to claim the benefit of the prison mailbox rule.  *Id.*

In a Recommended Disposition entered on December 28, 2018, I explained why May was entitled to the benefit of the prison mailbox rule, under which his Rule 37 Petition was deemed filed on February 16, 2017, well before the March 6, 2017 filing deadline.  *Doc. 24*.  However, even if he were not entitled to the benefit of the prison mailbox rule, the Circuit Clerk unquestionably received his Rule 37 Petition on or before March 6, 2017, because her transmittal letter to May, returning his Rule 37 Petition (on the legal unsustainable ground it lacked a "Cover Sheet") is dated *February 28, 2017*.

[5] May also made the conclusory allegation that Ms. Watkins, Mr. Dunagin, and the trial court failed to explain to him why he lost at the suppression hearing.  *Doc. 13-3 at 6*.

it lacked a "Cover Sheet." *Doc. 20 at 8*. Her letter stated that she was providing "a copy [of the Cover Sheet] for your convenience." *Id*. By the time May received this letter, it was impossible for him to complete the Cover Sheet and return it with his Rule 37 Petition *before* the March 6, 2017 filing deadline.

The Arkansas Rules of Criminal Procedure mention *nothing* about a "Cover Sheet" requirement for a Rule 37 Petition, much less that it is a filing requirement that can be used by a Circuit Court Clerk to reject a *timely* Rule 37 Petition. Similarly, no reported Arkansas case has ever recognized that a Circuit Clerk can impose additional filing requirements (such as a "Cover Sheet") that go beyond what is *specifically required* in Rule 37 of the Arkansas Rules of Criminal Procedure. Finally, the so-called "Cover Sheet" requirement that the Sebastian County Circuit Clerk sought to impose on May was in *direct conflict with* the prison mailbox provision of Rule 37.2(g). Thus, as a matter of law, May's *timely* Rule 37 Petition should have been accepted and filed on the date it was received in the Clerk's Office.[6]

---

[6] On June 5, 2018, Respondent filed a Motion to Dismiss, arguing that May's § 2254 action was *not* initiated within one year of the date on which the state "judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). On December 28, 2018, I entered a Recommended Disposition explaining in some detail why May's federal habeas action was initiated within AEDPA's one-year statute of limitations, which expired on March 6, 2017. *Doc. 24*.

On January 25, 2019, Respondent filed Objections to my Recommended Disposition and advanced a *new argument*, which relied on *Evans v. Chavis*, 546 U.S. 189 (2006) (a case not cited in Respondent's Motion to Dismiss and supporting Brief), to contend that May's federal habeas Petition was untimely. *Doc. 31*.

On March 10, 2017, May filed a "Request to Consider the Timeliness of Rule 37 Postconviction Petition." *Id. at 11-12*.  In this document, May correctly explained all of the reasons why it was *error* for the Circuit Clerk to reject his timely Rule 37 Petition, which met *all* of the filing requirements contained in Rule 37:[7]

> I am enclosing my Petition for Post-Conviction Relief under Rule 37 and Affidavit in Support of Request to Proceed In Forma Pauperis that was returned to me by you in reason of it did not contain the "required Cover Sheet." I have enclosed the cover sheet, but am afraid that I have exceeded the (60) day deadline since you sent my paperwork back to me.
>
> ...Under [Rule 37.2(g)][,] [a petition that is not timely] shall be deemed filed on the date of its deposit in the facility's legal mail system if the following conditions are satisfied . . . [T]he conditions were met when I sent you the original paperwork.
>
>                 * * *
>
> I am keeping the letter you sent me about the required Cover Sheet and the two (2) pages you stamped: (filed Ft. Smith DI 2017 FEB 28 AM 11[:]51) for my records to prove that I did send them to you in the timely manner required; but replaced the stamped papers with completed ones.
>
>                 * * *

---

On February 22, 2019, United States District Judge Brian S. Miller adopted the RD, denied Respondent's Motion to Dismiss, and ordered Respondent to file a Response.  *Doc. 32*.  *See Streu v. Dormire*, 557 F.3d 960 (8th Cir. 2009) (citing equitable grounds that were *less* compelling than the one involved in this case, the Court concluded that, even though the habeas petitioner had not filed a timely Notice of Appeal, he was entitled to tolling during the pendency of his motion to reopen his post-conviction proceedings, based on "abandonment by [his] post-conviction counsel"); *see also Smith v. Hobbs*, No. 5:11-CV-00091-KGB, 2012 WL 3595989 (E.D. Ark. Aug. 20, 2012).

[7] Under Arkansas law, *pro se* litigants are entitled to have the allegations in their pleadings liberally construed.  *State v. West*, 2014 Ark. 174, 5 (2014) (citing *Dodge v. Lee*, 352 Ark. 235, 100 S.W.3d 107 (2003).  However, they are held to the "same standard as licensed attorneys with respect to complying with the rules [of procedure]."  *Lucas v. Jones*, 2012 Ark. 365, 8, 423 S.W.3d 580, 585 (2012); *see also Breckenridge v. Lowery*, 2015 Ark. App. 157, 8 (2015) ("*Pro se* litigants . . . are not given special or relaxed treatment [with regard to the timeliness of their court filings].").

> I will continue to seek legal matters concerning if my rights of timely filing has been violated and if my filing the Rule 37 still stands under the grounds that it was sent in due time the first time I sent you the Rule 37 filing forms.

*Id. at 11-12*.

On April 17, 2017, the Sebastian County Court Administrator mailed May a letter containing good and bad news. *Id. at 13*. The *good news* was that the trial court had *overruled* the Circuit Clerk's legally unsupportable position that May was required to submit a "Cover Sheet" before she would file his otherwise timely and proper Rule 37 Petition. The *bad news* was that the trial court had entered "an order . . . on March 27, 2017, denying said [Rule 37] petition. A copy is enclosed for your review." *Id*.

The trial court's order gave the following reasons for denying Rule 37 relief: (1) "[May] failed to meet his burden in establishing [either deficient performance or prejudice]" by his trial counsel; (2) "the bulk of [May's] complaints do not involve trial counsel [Ms. Watkins] at all, but rather express disappointment with appellate counsel [Mr. Dunagin] and disagreement with the decisions of the trial and appellate courts"; and (3) "the files and record of the case . . . conclusively show [May] is entitled to no relief, thereby eliminating the need for an evidentiary hearing." *Doc. 13-3 at 11-12*.

May had thirty days from the entry of the March 27, 2017 order to file a *timely* Notice of Appeal.  Ark. R. App. P. Civ. 4(a).  This meant the filing deadline for the Notice of Appeal was April 26, 2017.[8]

On an unknown date *before* the expiration of the April 26, 2017 filing deadline, the Sebastian County Clerk's Office received May's *timely and proper* Notice of Appeal.  In that document, May specifically provided the proper case caption and case number for his pending Rule 37 action and stated that he was appealing to the Arkansas Supreme Court "from the Final Order of the Circuit Court of Sebastian County, entered on *April 17, 2017*."  *Doc. 28* (emphasis added).  It should have been readily apparent to anyone reviewing May's Notice of Appeal that he had committed a *minor scrivener's error* in identifying the "final Order of the

---

[8] To exhaust his Rule 37 ineffective assistance of counsel claims, May was required to raise those claims with the trial court in his Rule 37 Petition and then appeal the denial of those claims to the Arkansas Supreme Court.  Ark. S. Ct. R. 1-2. *See Smith v. Kelley*, No. 5:19-CV-0002, 2019 WL 5291384, at *3 (E.D. Ark. Oct. 2, 2019), report and recommendation adopted, No. 5:19-CV-0002, 2019 WL 5268632 (E.D. Ark. Oct. 17, 2019) (citing *Armstrong v. Iowa*, 418 F.3d 924, 925-26 (8th Cir. 2005)) (To exhaust Rule 37 ineffective assistance of counsel claims, a petitioner is required to raise those claims with the trial court and then appeal the denial of relief to the Arkansas Supreme Court); *Pigg v. Kelley*, No. 5:16-CV-00212, 2018 WL 2435600, at *7 (E.D. Ark. May 30, 2018), report and recommendation adopted, No. 5:16-CV-00212, 2018 WL 4224846 (E.D. Ark. Sept. 5, 2018), certificate of appealability denied, No. 18-3154, 2019 WL 1531850 (8th Cir. Feb. 27, 2019) (same).

Thus, it was procedurally important for May to file a *timely and proper* Notice of Appeal, with the Sebastian County Circuit Clerk, in order to preserve his ineffective assistance of counsel claims for later review by the Arkansas Supreme Court, and, if those claims were denied, for further review by a federal court in a § 2254 habeas action.  If May did not appeal those ineffective assistance of counsel claims to the Arkansas Supreme Court and he later filed a federal habeas action, he would have to overcome the argument that he *procedurally defaulted* those claims by not presenting them to the Arkansas Supreme Court.

Circuit Court of Sebastian County [as being] entered on *April 17, 2017*," the date of the Court Administrator's transmittal letter to May, instead of the correct date the trial court entered its final order, *March 27, 2017*. Under well-established Arkansas case law, the Circuit Clerk was *required* to file May's *timely and proper* Notice of Appeal, even though it incorrectly identified the date of the final order from which he was appealing. Instead, she refused to do so.

In a letter dated June 1, 2019, the Circuit Clerk cited May's error in providing the wrong date for the final order denying his Rule 37 Petition and used it as the *sole ground* for refusing to file his Notice of Appeal:

> Our office is returning to you the NOTICE OF APPEAL you sent for filing. In your filing, you referenced a "FINAL ORDER FILED APRIL 17, 2017," what you are referencing was a letter from the Court Administrator, which is not appealable.

*Doc. 28 at 5*.[9]

In *Duncan v. Duncan*, 2009 Ark. 565 (2009), the Court held that, if *an attorney* completes and files a Notice of Appeal that specifies the incorrect date for

---

[9] Because the Circuit Clerk refused to file May's Notice of Appeal, nothing in the record reflects the date it was received by the Clerk's Office. However, unlike May's scrivener's error, an *untimely* Notice of Appeal is a substantive defect that is a proper basis for a Clerk to reject a Notice of Appeal. *Jewell v. Fletcher*, 2012 Ark. 132, 1 (2012) (citing *Stacks v. Marks*, 354 Ark. 594, 127 S.W.3d 483 (2003) ("A timely notice of appeal is essential to this court obtaining jurisdiction."); *Jefferson v. Ark. Dep't of Human Servs.*, 356 Ark. 647, 158 S.W.3d 129 (2004) (The failure to file a timely notice of appeal deprives the appellate court of jurisdiction."). If the Clerk had received May's Notice of Appeal, *after* the April 26, 2017 filing deadline, she unquestionably would have relied on that *substantive legal defect – not* May's inconsequential mistake in citing the incorrect date for the trial court's final Order – to reject his Notice of Appeal on that ground. Because the Circuit Clerk's letter mentions *nothing* about May's Notice of Appeal being untimely, she undoubtedly received it *before* the April 26, 2017 filing deadline.

the final order being appealed, it does *not* render the Notice of Appeal fatally deficient, as long as it otherwise substantially complies with Ark. R. App. Pro.–Civ. 3(e).  *See Lovan v. Lovan*, 2015 Ark. App. 515, 2 (2015) ("where an appellant attempts to designate the order and simply misidentifies the order by date, our courts will find substantial compliance"); *Callaway v. Abshure*, 2013 Ark. App. 21, 2 (2013) ("where an appellant attempts to designate the order appealed from and simply misidentifies the order by date, our courts will find substantial compliance despite the inaccuracy"). Accord: *Van Buren Cnty. Title Co. v. Bass*, 2009 Ark. 406, 370 S.W.3d 811; *Pro-Comp Mgmt., Inc. v. R.K. Enters., LLC*, 372 Ark. 190, 272 S.W.3d 91 (2008); *Henley v. Medlock*, 97 Ark. App. 45, 244 S.W.3d 16 (2006); *Farm Bureau Mut. Ins. Co. v. Sudrick*, 49 Ark. App. 84, 896 S.W.2d 452 (1995).

Under this standard (which was developed to *save attorneys* who incorrectly identify the date of the final order being appealed), May's Notice of Appeal complied with Rule 3(e) in all respects *except* providing the *correct date* of the trial court's order denying Rule 37 relief.[10]  Thus, under well-established Arkansas law, the Circuit Clerk *was required* to file May's Notice of Appeal and allow him a clear path to appeal the trial court's denial of Rule 37 relief to the Arkansas Supreme Court.

---

[10] Because the *only order* entered by the trial court in May's Rule 37 case was *the final order*, the identification of that Order should have been *readily apparent* to the Clerk, with or without May's citation to the correct date it was entered.

As May later explained in his habeas Petition, when he received the Circuit Clerk's June 1, 2017 letter refusing to file his timely and proper Notice of Appeal, he simply "gave up" on his appeal.  According to May, the Rule 37 process, at least as administered by the Sebastian County Clerk's Office, was so complex and confusing that it required a law degree to understand:

> Where Petitioner had no counsel to prepare (or) assistance by counsel, and was not able to succeed [*sic*]. Though a notice of appeal were [*sic*] filed. [*sic*] The ability of Petitioner to satsifi [*sic*] the required process of the court was not there as it would have been had experience counsel been part of the process.

*Doc. 3 at 4.*

Rule 37 petitioners in Arkansas, almost all of whom are *pro se*, must successfully navigate a number of complex procedural requirements to properly exhaust their state court remedies, something they must accomplish *before* initiating a federal habeas action.  Suffice it to say, this already difficult process should *not* be further complicated by circuit clerks who create spurious legal grounds to reject the timely and proper Rule 37 papers of *pro se* petitioners.

## II.  Discussion

On February 19, 2018, May filed his habeas Petition initiating this action. Liberally construed, May's Petition raises the following claims:[11]

---

[11] Federal courts are required to liberally construe the claims of *pro se* habeas petitioners. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015); *Spencer v. Haynes*, 774 F.3d 467, 471 (8th Cir. 2014); *Meador v. Branson*, 688 F.3d 433, 436 (8th Cir. 2012).

1. Mr. Dunagin provided constitutionally ineffective assistance, on direct appeal, by failing to challenge the trial court's alternative finding that Officer Taylor's search of May's truck was constitutional.

2. Ms. Watkins provided constitutionally ineffective assistance of counsel by failing to challenge or object to Officer Taylor's testimony that, after May's arrest, he consented to the search of his truck.

3. Ms. Watkins provided constitutionally ineffective assistance of counsel by failing to investigate May's case and by conducting inadequate discovery prior to the suppression hearing.

4. Ms. Watkins provided constitutionally ineffective assistance of counsel by failing to object to "profiling" at the suppression hearing.

5. Ms. Watkins provided constitutionally ineffective assistance of counsel by failing to object to the introduction of May's out-of-state criminal history during the sentencing phase of his trial.

6. The trial court erred in failing to suppress the evidence that resulted from Officer Taylor's search of May's truck.

7. The Arkansas Court of Appeals erred in holding that, because Mr. Dunagin did *not* challenge the trial court's alternative finding that the search of May's truck was constitutional, it must affirm the constitutionality of the search.

*Docs. 2 and 3*.

For the reasons explained below, all of May's claims should be dismissed, with prejudice.

### A. May Procedurally Defaulted His Ineffective Assistance of Counsel Claim Against Mr. Dunagin

A habeas petitioner must first "fairly present" the substance of his claims in

state court *before* seeking § 2254 relief in federal court. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State"). To satisfy this requirement, a petitioner must raise those claims in "one complete round of the State's established appellate review process." *Murphy*, 652 F.3d at 848-49; *Grass v. Reitz*, 643 F.3d 579, 584-85 (8th Cir. 2011).

By exhausting all available state court remedies, a habeas petitioner gives the state that convicted him an "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam). When a petitioner fails to fully exhaust his claims in state court and the time for doing so has expired, his claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).

Under Arkansas law, a defendant's first opportunity to raise an ineffective assistance of counsel claim is in a Rule 37 Petition filed with the trial court after his conviction has been finally adjudicated. *Armstrong v. Iowa*, 418 F.3d 924, 925-26 (8th Cir. 2005) (Exhaustion of Rule 37 ineffective assistance of counsel claims requires petitioner to raise those claims with the trial court and then appeal its denial of relief to the Arkansas Supreme Court.); *Ratchford v. State*, 357 Ark. 27, 31 (2004) (Ineffective assistance of trial counsel claims generally must be raised in a Rule 37

16

petition and may not be considered on direct appeal.).

On February 16, 2017, May filed a timely *pro se* Rule 37 Petition raising only one specific and properly supported ineffective assistance of counsel claim: Mr. Dunagin provided ineffective assistance of counsel, on direct appeal, by failing to raise and challenge the trial court's alternative theory for upholding the constitutionality of the search of May's truck.

With regard to Ms. Watkins, May made only a vague and conclusory allegation that she was "ineffective," without providing any details describing *how* her performance during his trial was constitutionally deficient. *Docs. 13-3 at 8-9, Doc. 20 at 3*. Under Arkansas law, a vague and factually unsupported ineffective assistance of counsel claim is procedurally defective, and can be summarily dismissed by the trial court on that basis. *Johnston v. State*, 2015 Ark. 162, 7, 459 S.W.3d 782, 787 (2015) (neither conclusory statements nor allegations without factual substantiation are sufficient to state a claim for relief in a Rule 37.1 petition); *Stiggers v. State*, 2014 Ark. 184, 8, 433 S.W.3d 252, 259 (2014).

On March 27, 2017, the trial court entered a final order denying all of the claims May raised in his Rule 37 Petition. *Doc. 13-3 at 11-12*.

May submitted a timely and proper Notice of Appeal, which the Circuit Clerk *improperly rejected*, because he provided an incorrect date for the final order denying Rule 37 relief. *Doc. 28 at 4-5*. While May should *not* have been subjected

to this improper procedural setback from the Circuit Clerk, it remained his responsibility, as a *pro se* litigant, to avail himself of the remedies that were *still* available to him to preserve his right to appeal to the Arkansas Supreme Court. *Townsell v. Kelley*, 678 F. App'x 458, 459 (8th Cir. 2017) (unpublished) (petitioner was not prevented from perfecting his appeal based on the absence of final formal order denying Rule 37 relief because he could have sought a formal order or filed a petition for writ of mandamus in the Arkansas Supreme Court); *Bell v. Attorney Gen. of Iowa*, 474 F.3d 558, 561 (8th Cir. 2007) (generally cause to excuse procedural default must be external to the petitioner, and not attributable to the petitioner); *Stanley v. Lockhart*, 941 F.2d 70, 709 (8th Cir. 1991); *Williams v. Hobbs*, No. 5:13-CV-209, 2014 WL 7152687, at *4 (E.D. Ark. Dec. 15, 2014) (*pro se* status and any unfamiliarity with the law or procedural matters, without more, do not excuse the failure to perfect Rule 37 appeal); *Foley v. Hobbs*, No. 5:11CV00065, 2013 WL 5673526, at *5 (E.D. Ark. Oct. 15, 2013) (same); *Plunkett v. Norris*, No. 5:08CV00102, 2008 WL 4368908, at *5 (E.D. Ark. Sept. 22, 2008) (acknowledging that a Rule 37 petitioner bears the burden of obtaining a ruling and perfecting his appeal under Arkansas law).

There were *two procedural remedies* available to May to overturn the Circuit Clerk's wrongful refusal to file his timely and proper Notice of Appeal: (1) a "Motion for Rule on the Clerk"; and (2) a "Motion for a Belated Appeal." *McDonald*

*v. State*, 356 Ark. 106, 146 S.W.3d 883 (2004) ("If there is good reason the appeal was not perfected, the case for good reason can be made in the motion [for a belated appeal], and this court will decide whether good reason is present."); *see also Halfacre v. Kelley*, 2016 Ark. 171, 1 (2016) (granting motion for rule on clerk where circuit clerk had refused to file-mark a number of pleadings and had not properly file-marked the court order from which the petitioner was appealing).  If May had filed either of those Motions with the Arkansas Supreme Court, and explained the Clerk's spurious ground for refusing to file his timely and proper Notice of Appeal, the Court almost certainly would have found this to constitute an adequate ground for overturning the Circuit Clerk's decision and allowing May to proceed with his Rule 37 appeal.

By May's own admission in his habeas Petition, he simply "gave up" on pursuing his Rule 37 Appeal after the Circuit Clerk refused to file his Notice of Appeal.  By doing so, May procedurally defaulted his initially raised and litigated Rule 37 ineffective assistance of counsel claim against Mr. Dunagin.  He *cannot* rely on the *Martinez*[12] exception to excuse the procedural default.  *Davila v. Davis*, 137 S.Ct. 2058 (2017) (*Martinez* does not apply to excuse procedural defaulted claims of ineffective assistance of *appellate* counsel).

---

[12] *Martinez v. Ryan*, 566 U.S. 1 (2012).  *See* discussion *infra*. at Section II. B of the *Martinez* exception and its requirements.

Finally, even if May had properly pursued his ineffective assistance of counsel claim against Mr. Dunagin to the Arkansas Supreme Court, he would *not* have prevailed on that claim under controlling federal case law. *See Utah v. Strieff*, 136 S.Ct. 2056, 2063, 195 L.Ed. 2d 400 (2016) (where officer's misconduct is not "flagrantly unlawful,"[13] evidence was still admissible because the officer's discovery of a valid arrest warrant attenuated the connection between the unconstitutional investigatory stop and the evidence ultimately seized incident to arrest); *United States v. LeBeau*, 867 F.3d 960, 972 (8th Cir. 2017) (courts will not exclude evidence discovered as a result of an illegal search or seizure "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance."); *see also United States v. Simpson*, 439 F.3d 490, 496 (8th Cir. 2006) (discovery of outstanding arrest warrant constituted an extraordinary intervening circumstance that purged much of the taint associated with the officers' unconstitutional conduct).

There was nothing "flagrantly unlawful" about Officer Taylor's alleged misconduct in conducting the *Terry* stop, and then questioning May about his

---

[13] "For the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure." *United States v. Yorgensen*, 845 F.3d 908, 915 (8th Cir. 2017) (quoting *Strieff*, 136 S.Ct. at 2064). Flagrant misconduct has been found where: (1) police broke into defendant's apartment and arrested him without probable cause for the purpose of investigating the murder to which he later confessed; and (2) authorities arrested without probable cause in the hope that something would turn up, and he confessed shortly thereafter without any meaningful intervening event." *Yorgensen*, 845 F.3d at 915 (citing *Brown v. Illinois*, 422 U.S. 590, 603-604 (1975); *Taylor v. Alabama*, 457 U.S. 687, 691 (1982)).

behavior inside The Tackle Box. Additionally, his discovery of the outstanding arrest warrant for May was an intervening circumstance that "purged" any taint from his earlier actions. Thus, based on *Strieff* and its progeny, the Arkansas Supreme Court would have upheld, on the merits, the constitutionality of the search under the trial court's "alternative finding."

**B.    The *Martinez* Exception Does Not Save May's Procedurally Defaulted Ineffective Assistance of Counsel Claims Against Ms. Watkins**

Unlike the properly supported ineffective assistance of counsel claim May asserted against Mr. Dunagin in his Rule 37 Petition, May's claim against Ms. Watkins was so conclusory and factually unsupported that it was impossible to make a meaningful determination of the nature of Ms. Watkins's alleged ineffectiveness or whether it had any prejudicial effect on May. In other words, the vagueness of this conclusory ineffective assistance of counsel claim was tantamount to May making no ineffective assistance of counsel claim at all against Ms. Watkins. May argues that the procedural default of his ineffective assistance of counsel claims against Ms. Watkins should be excused under the Court's holding in *Martinez v. Ryan*, 566 U.S. 1 (2012).

The *threshold obligation* May must satisfy under *Martinez* is to demonstrate that, at the initial stage of his Rule 37 case, he was proceeding *pro se*, and, in that initial proceeding, he failed to raise the ineffective assistance of counsel claims

against Ms. Watkins that he is now asserting, for the first time, in this federal habeas action. The undisputed facts establish that May has satisfied the first prong of the *Martinez* exception.[14]

However, *to save* his procedurally defaulted ineffective assistance of counsel claims, May must go on to show that each such claim is *substantial*, *i.e.*, the claim: (1) has "some merit;" *and* (2) is supported by "some facts." *Martinez*, 566 U.S. at 14. This "substantiality test" constitutes the second prong of the *Martinez* exception and it is the one habeas petitioners have the most difficulty satisfying.[15]

---

[14] In May's Rule 37 Petition, he makes the conclusory allegation that Ms. Watkins provided ineffective assistance of counsel, with only the following disjointed facts to support that claim:

> My Public Defender, Rita Watkins, came to my dorm in Sebastian County Jail and said that we lost the Motion to Suppress hearing. I asked her under what grounds did he deny the Motion, and she said that the Judge, Tabor, did not give her a reason why. I then asked if I would be called in front of the stand so that he can tell me on record why I was denied and she said no.

*Doc. 35-4 at 4.* Nothing about those facts can be reasonably construed as sufficient to raise and properly support Ms. Watkins's alleged ineffective representation as May has described in Claims 2, 3, and 4. Thus, all of those claims qualify for analysis under the *Martinez* exception:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim . . . where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial[.]

*Martinez*, 566 U.S. at 14.

[15] Of course, even if a habeas petitioner satisfies the *Martinez* "substantiality test," as to each of his ineffective assistance of counsel claims, he must then face the daunting task of meeting the high standard of proof required to demonstrate, *on the merits*, that his attorney provided ineffective assistance of counsel in each of the ways he has alleged. In *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984), the Court held that, for a habeas petitioner to prevail on an ineffective assistance of counsel claim, he must prove: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for counsel's error, there is a reasonable probability that the result of the criminal proceeding would have been different.

For the reasons explained below, May has failed to show that any of his procedurally defaulted ineffective assistance of counsel claims against Ms. Watkins are "substantial."

### 1. Ms. Watkins's Alleged Ineffectiveness for Not Challenging Officer Taylor's Testimony That, After Arresting May, He Consented to the Search of His Truck

May explains his first ineffective assistance of counsel claim against Ms. Watkins as follows:

> Though transcript shows that Petitioner did in fact consent to a search, Petitioner repetedly during [*sic*] trial asked trial counsel to object to the less than truthful statements made by the arresting officer testimony of consent . . . At no time did Petitioner give his consent to search . . . It is very common nowadays for police officers to alledge [*sic*] that a person gave consent to search, when fact is the officers word wheather [*sic*] truth or not will carry more weight than the citizen being accused[,] even if consent was not given. Here Petitioner still holds that consent was not given by him.

---

Courts generally conduct a *Martinez* analysis, to determine if the defaulted ineffective assistance of counsel claims can be saved, *before* applying the *Strickland* test to determine if the attorney's legal representation was "below an objective standard of reasonableness" sufficient to create "a reasonable probability that the result of the criminal proceeding would have been different." *See, e.g., Camacho v. Kelley*, 888 F.3d 389, 394, n. 3 (8th Cir. 2018) (observing that the record was unclear whether the district court, which held an evidentiary hearing on the petitioner's procedurally defaulted habeas claim, denied relief based on procedural default or the merits, but holding that because "a procedural default analysis [under *Martinez*] and a merits analysis each require application of the *Strickland* ineffective assistance standard, our conclusion here would be the same under either analysis."); *compare Hogan v. Kelley*, 826 F.3d 1025 (8th Cir. 2016) (concluding that because habeas petitioner suffered no *Strickland* prejudice, he failed to demonstrate a substantial ineffective assistance claim sufficient to excuse his procedural default).

*Doc. 3 at 9-10* (emphasis in original). Because there are *no facts* in the record which support May's belated contention that he did not consent to the search, he has failed to satisfy the *Martinez* requirement that "at least some facts" support his claim.[16]

May attended the January 13, 2016 suppression hearing and heard Officer Taylor unequivocally testify that, after May was arrested on the outstanding warrant, *he verbally consented to the search of his vehicle*. *May*, Ark. Ct. App. No. CR-16-241, *Tr. Rec. at 127*.

First, if May believed that Officer Taylor had lied during the suppression hearing about the crucially important issue of consent, he was obligated to raise that issue with Ms. Watkins and offer his own testimony, during the suppression hearing, for the *limited purpose* of making it clear he did *not* consent to the search of his truck. May's silence, in the face of Officer Taylor allegedly committing perjury during the suppression hearing, casts grave doubt on how this claim might have "some merit."

Second, on January 27, 2016, the trial court conducted a hearing on May's request for a continuance to allow him time to hire a new private attorney. *Id. at 143-146*. In support of that request, May made the following statement:

> We filed for Motion to Suppress with the Court on the 13th. I just received Friday the Motion to Suppress was denied. *The Court hearing went excellent.*

---

[16] The warrantless search of a vehicle does not violate the Fourth Amendment if the law enforcement officer first obtains voluntary consent to search. *United States v. Siwek*, 453 F.3d 1079, 1084 (8th Cir. 2006) (citing *United States v. White*, 42 F.3d 457, 459 (8th Cir. 1994)).

> *Everyone thought we should have won the case.* . . I've got some serious charges and some serious – holds some serious time, and I need other representation.

*Id.* at 143 (emphasis added).

Because May attended the suppression hearing on January 12, 2016, he *knew* that Ms. Watkins had only challenged the constitutionality of the initial stop and Officer Taylor's lack of probable cause to search the truck, *not* Officer Taylor's supposedly perjured testimony that May later *consented* to the search of his vehicle. It is preposterous for May to now argue that Officer Taylor lied and perjured himself regarding May's consent to the search, while simultaneously telling the trial court, *on January 27, 2016*, that he thought the "[suppression] hearing went excellent" and he "should have won the case."

According to May, prior to the suppression hearing, he told Ms. Watkins that he did *not* consent to allow his truck to be searched. If he, in fact, conveyed that information to her, this would mean she did nothing to challenge Officer Taylor's perjured testimony during the suppression hearing. May's unexplained failure to raise this matter himself, *directly with the trial court during the January 27, 2016 hearing*, and then *use it* to support his request for a continuance so he could hire a *new lawyer*, makes his argument impossible to believe.

Because May has failed to demonstrate this ineffective assistance of counsel claim is "substantial," his procedural default of that claim cannot be excused under

the second prong of *Martinez*. Accordingly, the claim should be dismissed, with prejudice.

>    **2.    Ms. Watkins's Alleged Ineffectiveness for Failing to Conduct Adequate Discovery Before the Suppression Hearing**

The only facts that arguably support this claim come from Billie Knittig ("Ms. Knittig"), who was a co-owner of The Tackle Box and who offered testimony during the suppression hearing.[17]  According to her, she called the police department and reported the "suspicious behavior" of May and his female companion.  *May*, Ark. Ct. App. No. CR-16-241, *Tr. Rec. at 94-95*.  She testified that May and his companion wandered around the store for a couple of hours before buying anything, and she thought the two were "tweaking" and "had the look of somebody on drugs." *Id. at 95-96*.  Finally, Ms. Knittig claimed that she called the police because: (1) she thought the couple had either stolen or were about to steal from the store; and (2) if they left in the truck, she believed either one of them would be driving under the influence of drugs. *Id. at 101*.

May claims that Ms. Watkins could have successfully impeached Ms. Knittig's suppression hearing testimony by subpoenaing the surveillance videos from The Tackle Box, which would have established that he and his female

---

[17] Ms. Knittig did not testify at trial.

companion were only in the store for a little over an hour and "no suspicious activity was taking place." *Doc. 3 at 10.*

At most, Ms. Knittig's testimony provided *background information* that was *not relevant* to the issue of whether the search of May's truck was constitutional. Furthermore, even if Ms. Watkins had completely discredited Ms. Knittig, and got her to admit May had been in the store for about one hour, *not* a couple of hours, *and* that he did *not* engage in any "suspicious activity," it would have had *no effect* on the trial court's alternative finding that the search was constitutional because May consented to it.

The trial court concluded that Officer Taylor's discovery of a valid and outstanding arrest warrant was an intervening circumstance sufficient to purge any constitutional deficiencies arising from Officer Taylor's initial *Terry* stop or any resulting lack of probable cause to search the vehicle arising from his questioning of May. Ms. Knittig's testimony about what she told the Fort Smith Police Department's dispatcher, and her own subjective impression of May and his conduct inside her store had nothing to do with the trial court's reason for concluding the search of May's truck was constitutional. *May*, Ark. Ct. App. No. CR-16-241, *Tr. Rec. at 48*.

Because May has failed to demonstrate that his second ineffective assistance of counsel claim against Ms. Watkins is "substantial," his procedural default of this

claim cannot be excused under the second prong of *Martinez*.  Accordingly, this claim should be dismissed with prejudice.

> **3.    Ms. Watkins's Alleged Ineffectiveness for Not Objecting to "Profiling" During the Suppression Hearing.**

May argues that he was the victim of "profiling" based on Ms. Knittig's suppression hearing testimony that he "was picking at his skin, and has bad teeth . . . therefore he must be on drugs . . This is profiling."  *Doc. 3 at 11*.  According to May, Ms. Knittig's recitation of those subjective and irrelevant opinions compelled Ms. Watkins to raise "profiling" as a ground for striking Ms. Knittig's testimony. Because Ms. Watkins made no objection to that testimony, May claims she provided ineffective assistance of counsel.  This argument fails for the same reasons the Court relied on to reject May's second ineffective assistance of counsel claim, *i.e.*, it is factually unsustainable, lacks any legal merit, and does not come close to satisfying the *Martinez* substantiality test. Accordingly this claim should be dismissed, with prejudice.

> **4.    Ms. Watkins's Alleged Ineffectiveness During The Sentencing Phase Of May's Trial**

On November 19, 2015, shortly after criminal charges were filed against May in Sebastian County Circuit Court, the deputy prosecutor filed a Response to Defendant's Motion for Discovery.  *May*, Ark. Ct. App. No. CR-16-241, *Tr. Rec. at 14-16*.  In that Response, the deputy prosecutor affirmatively stated that "Certified

28

copies of Defendant's prior felony convictions . . . [have been] previously provided . . . to defense counsel [Ms. Watkins]." *Id. at 16*.

On December 29, 2015, May and Ms. Watkins appeared before the trial judge for a hearing on May's motion to reduce his bond. *Id. at 65*. May called his mother as a witness, and the deputy prosecutor questioned her in considerable detail about her son's prior criminal history. *Id. at 65-87*. She admitted that she knew about her son's 2014 felony conviction in Roland, Oklahoma,[18] for unlawfully possessing a firearm. She also admitted she knew about her son's felony conviction in Louisiana, in 2011,[19] for possession of methamphetamine.[20] *Id. at 78, 89*.

The deputy prosecutor introduced into evidence certified copies of May's many criminal convictions (for misdemeanors and felonies), without any objection from Ms. Watkins.[21] Having been provided with certified copies of those

---

[18] Roland is only a short distance from Fort Smith, Arkansas.

[19] During the hearing, the deputy prosecutor erroneously told May's mother that her son was convicted in "2010" of felony possession of methamphetamine in Louisiana. However, the certified copies of the court records from Ouachita Parrish, Louisiana, establish that May was *charged* with that offense in 2010 but did not enter his guilty plea until "2011." *May*, Ark. Ct. App. No. CR-16-241, *Tr. Rec. at 365, 403-404*.

[20] May's mother explained that she was her son's only family member in Fort Smith, but he had other family members living in Louisiana. Between 1995 and 2012, she testified May lived with family members in Louisiana, but, after 2012, "he has been back and forth between Louisiana and Arkansas." *May*, Ark. Ct. App. No. CR-16-241, *Tr. Rec. at 77*.

[21] The deputy prosecutor unquestionably introduced a certified copy of the court records from Louisiana establishing that defendant, "Jimmy Dewayne May" was convicted of felony possession of methamphetamine. *May*, Ark. Ct. App. No. CR-16-241, *Tr. Rec. at 365*. While May's mother admitted that she knew her son was convicted of felony possession of a gun, in

convictions, approximately six weeks earlier, Ms. Watkins had already seen those documents, and had ample opportunity, *before the hearing*, to review and investigate those convictions and discuss them with May. She undoubtedly did not object to the admissibility of certified copies of those convictions because she had no good faith legal basis for doing so. Similarly, May elected not to offer his own testimony disputing any of those convictions, something he clearly would have done if *he* contested the accuracy or validity of any of those convictions.

Finally, because May's own mother had testified that *she knew* her son had been convicted of felony possession of methamphetamine in Louisiana in 2011 and felony possession of a firearm in Oklahoma in 2014, Ms. Watkins could *not* challenge either of those convictions on the ground her client was not the "Jimmy Dewayne May" named in the certified copies of the court records in both of those cases. *Id. at 399-401, 403-404*.

After denying May's motion to reduce bond, the trial judge warned May of the possibility he could be charged as a *habitual offender*:

> [A]lthough the defendant [May] has not been alleged to have been a habitual
> criminal, it appears that the information could be amended to reflect that,

---

Roland, Oklahoma, in 2014, a certified copy of court record establishing that conviction is not among the documents introduced into evidence during the bond reduction hearing. However, during the sentencing phase of May's trial, one month later, the deputy prosecutor was careful to introduce a certified copy of court records from: (1) Sequoyah County, Oklahoma, proving that "Jimmy Dewayne May" was convicted of being a felon in possession of a firearm in 2014; and (2) Ouachita Parrish, Louisiana, proving that "Jimmy Dewayne May" was convicted of felony possession of methamphetamine in 2011. *Id. at 399-401, 403-404*.

> which would make the sentence on all of these offenses be higher than he
> faces now.

*Id. at 92*.  Of course, the trial judge gave this warning because he was convinced by

the unrefuted evidence introduced during the hearing that May had two prior out-of-

state felony convictions.  Under Arkansas law, this meant May might be charged as

a "habitual offender" and exposed to an "extended sentence."[22]

Thus, by the time the bond hearing ended, May and Ms. Watkins both *knew*

that: (1) the trial judge had decided beyond a reasonable doubt that May had two

prior out-of-state felony convictions; and (2) the uncontroverted sworn testimony of

May's mother established beyond a reasonable doubt that May was the "Jimmy

Dewayne May" who was convicted of both of those felonies.  Finally, Ms. Watkins

and May had been placed on notice that the prosecutor might amend the criminal

information to charge May as a "habitual offender" and seek an "extended sentence."

On January 21, 2016, thirteen days before May's trial, the prosecutor filed an

amended criminal information which added, as Count 5, the offense of "habitual

---

[22] Ark. Code Ann. § 5-4-503 provides that, under Arkansas's Habitual Offender Statute (Ark. Code Ann. § 5-4-501), a felony conviction "in another jurisdiction constitutes a previous conviction . . . if a sentence of imprisonment for a term in excess of one year was authorized under a law of the other jurisdiction."  Both of May's out-of-state convictions were punishable by more than one year of imprisonment.  *See* La. Stat. Ann. § 40:967 (Louisiana's possession of methamphetamine statute in 2010-11); 21 Okl. St. Ann. § 1283(A) (Oklahoma's felon in possession of firearm statute in 2014).

Ark. Code Ann. § 5-4-504(a) allows a previous felony conviction to be proved "by any evidence that satisfies the trial court beyond a reasonable doubt that the defendant was convicted or found guilty."  Subpart (b)(1) specifically recognizes a "certified copy of the record of a previous conviction . . . by a court of record" as "sufficient to support a finding [by the trial court] of a prior conviction."

offender" based on May "having previously been convicted of more than one (1) felony but fewer than four (4) felonies" which made him "subject to an extended term of imprisonment . . . ." *Id. at 4*.[23] This meant, *if* May was convicted on *any* of the felonies charged in the amended information, he would be sentenced as a habitual offender, "with more than one but fewer than four prior felony convictions."[24] Under Arkansas law, the sentences imposed on those convictions could be "extended" as follows: (1) Simultaneous Possession of Drugs and Firearms, a Class Y felony, increased from "not less than 10 nor more than 40 years, or life" to "not less than 10

---

[23] The four preceding counts of the Amended Information charged May with: Simultaneous Possession of Drugs and Firearms (Count 1); Possession of Drug Paraphernalia (Count 2); Possession of Firearm by Certain Persons (Count 3, which was severed prior to the trial); and Possession of Methamphetamine (Count 4).  All of those offenses were alleged to have been committed on June 13, 2015.

[24] Ark. Code Ann. § 5-4-501(a) provides as follows:

(a)(1) A defendant meeting the following criteria may be sentenced to pay any fine authorized by law for the felony conviction and to an extended term of imprisonment as set forth in subdivision (a)(2) of this section:
(A) A defendant who:
(i) Is convicted of a felony other than [felonies involving violence] after June 30, 1993; and
(ii) Has previously been convicted of more than one (1) felony but fewer than four (4) felonies . . . [shall be subject to]:
. . .
(A) For a conviction of a Class Y felony, a term of imprisonment of not less than ten (10) years nor more than sixty (60) years, or life;
. . .
(C) For a conviction of a Class B felony, a term of imprisonment of not less than five (5) years nor more than thirty (30) years;
(D) For a conviction of a Class C felony, a term of imprisonment of not less than three (3) years nor more than twenty (20) years;
(E) For a conviction of a Class D felony, a term of imprisonment of not more than twelve (12) years[.]

nor more than 60 years, or life"; (2) Possession of Drug Paraphernalia, a Class B felony, increased from "not less than 5 nor more than 20 years" to "not less than 5 nor more than 30 years"; (3) Possession of Firearms by Certain Persons,[25] a Class D felony, increased from "shall not exceed 6 years" to "not more than 12 years"; and (4) Possession of Methamphetamine, a Class C felony, increased from "not less than 3 nor more than 10 years" to "not less than 3 nor more than 20 years."

On February 3, 2016, May went to trial on Count 1 (Possession of Methamphetamine and a Firearm), Count 2 (Possession of Drug Paraphernalia), Count 4 (Possession of Methamphetamine), and Count 5 (being a habitual offender). *May*, Ark. Ct. App. Case No. CR-16-241, *Tr. Trans. at 39*. Later that day, the jury returned a verdict finding May guilty on Counts 1, 2, and 4 of the amended information.

After the jury returns a guilty verdict against a defendant charged as a habitual offender, Arkansas Code Ann. § 5-4-502 sets forth the procedure for sentencing. It provides that, "*out of the hearing of the jury* the trial court shall hear evidence of the

---

[25] The "felon in possession of a firearm" charge in Count 3 was severed before trial. According to the Sebastian County Court's online docket, May later pleaded guilty to that charge and received a sentence of 72 months. *See State v. May*, No. 66FCR-15-607, accessible at https://caseinfo.arcourts.gov/cconnect. Because the ADC website makes it clear that May is only currently serving sentences for the three convictions *in this case*, it is unclear when or if May served any sentence on the felon in possession of a firearm charge. *See* https://apps.ark.org/inmate_info/search.

defendant's prior felony convictions . . . and shall determine the number of prior felony convictions, if any." *See* Ark. Code Ann. § 5-4-502(2)(A) (emphasis added).

Of course, during the December 29, 2015 hearing on May's motion to reduce bond, the trial judge had heard testimony, and received evidence (none of which was controverted) about May's prior felony convictions in Louisiana and Oklahoma, *and* he had *already decided*, based on that evidence, May was a "habitual offender." It was that determination which led the trial judge to warn May that the prosecutor might amend the information to charge him as a "habitual offender."

Thus, after the jury returned its guilty verdicts on each of the three substantive courts in the amended information, there was *no reason* for the trial judge to excuse the jury to conduct a hearing on May's "prior felony convictions." Instead, he simply asked the deputy prosecutor if she had "anything to present on behalf of the State." The following colloquy then took place:

Prosecutor:    Yes, Your Honor. . . . first, I would move to introduce . . . .a certified copy of defendant's prior conviction for possession of a firearm, a felony; possession of imitation controlled dangerous substance, misdemeanor; and possession of drug paraphernalia, misdemeanor, out of the State of Oklahoma from 2014.[26]

Judge:    Ms. Watkins[?]

Ms. Watkins: No objection.

---

[26] A certified copy of this court record established that on May 14, 2014, "Jimmy Dewayne May", *appearing with his attorney*, entered a guilty plea to "possession of a firearm," a felony. *May*, Ark. Ct. App. No. CR-16-241, *Tr. Rec. at 399-401; 403-404.*

Judge:         It will be received.

. . .

Prosecutor:    Move to introduce . . . a certified copy of defendant's prior conviction for possession of methamphetamine, felony, out of the State of Louisiana in 2011.[27]

Judge:         It will be received.

Ms. Watkins: No objection.

*Id. at 311-312.*

In May's habeas Petition, he contends that Ms. Watkins provided ineffective assistance of counsel because she failed "to object to introduction of [May's] out-of-state convictions at the sentencing hearing when an in-camera hearing was not held to determine whether the alleged prior convictions warranted the habitual offender statute to be at play." *Doc. 3 at 12.* To support this claim, May provides *no facts* suggesting the possible grounds Ms. Watkins had for objecting to *certified copies* of his prior felony convictions from Louisiana or Oklahoma.

*As May well knows*, the trial judge *did conduct a hearing*, on December 29, 2015, during which the deputy prosecutor admitted certified copies of May's criminal convictions and testimony from his own mother admitting she knew he previously had been convicted of felonies in Louisiana in 2011 and Oklahoma in 2014. While Ms. Watkins did not object to the admission into evidence of any of

---

[27] A certified copy of this court record established that, on March 1, 2011, "Jimmy Dewayne May", *appearing with his attorney*, entered a guilty plea to "possession of methamphetamine," a felony.

those convictions, there is *nothing* in the record to suggest she had any plausible good faith basis for doing so.[28]  May sat through that entire hearing, heard the evidence presented regarding his two out-of-state felony convictions, and offered *no testimony* to challenge or rebut the deputy prosecutor's evidence that he had been convicted of both of those offenses.  At the end of that hearing, the trial judge warned May that, based on the evidence presented during the hearing, the State might amend the information to add a new count charging him as a "habitual offender."  On January 21, 2016, an amended information was filed adding Count 5, which charged May as a habitual offender who had more than one but fewer than four prior felony convictions.

Having previously heard evidence sufficient to establish, beyond a reasonable doubt, that May was a habitual offender, there was *no reason* for the trial judge to excuse the jury and conduct what would have amounted to a *second hearing* on that issue.  Thus, the trial judge was free to take the jury's verdict and ask the prosecutor to introduce evidence of May's two prior convictions, without conducting the hearing described in Ark. Code Ann. § 5-4-502(2)(A).

May has come forward with *no facts* to support any aspect of his claim that Ms. Watkins provided ineffective assistance of counsel, either in connection with

---

[28] As previously explained, the deputy prosecutor had provided Ms. Watkins with certified copies of those convictions six weeks *before* the bond reduction hearing.

her failure to object to the certified copies of the out-of-state court records establishing his two prior felony convictions, beyond a reasonable doubt, or objecting to the trial court not conducting a *second hearing* to determine if May was a "habitual offender." Finally, May has failed to demonstrate how this is a substantial claim. Accordingly, because his procedural default cannot be excused under the second prong of *Martinez*, this ineffective assistance of counsel claim should be dismissed, with prejudice.

### C. Because May's Fourth Amendment Claim Was "Fully and Fairly Litigated" in the State Courts of Arkansas, This Court Is Now Barred From Considering It

May challenges the now final decision of the Arkansas Court of Appeals affirming his conviction based on the trial court's alternative finding upholding the constitutionality of the search of May's truck.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id*. at 482. Accord: *Willett v. Lockhart*, 37 F.3d 1265, 1270 (8th Cir. 1994) (en banc) ([A] federal habeas court considering a state prisoner's claim alleging a Fourth Amendment violation should abstain from reviewing the state court records to determine if the state's factual findings are fairly supported by

the record as a whole . . . Rather, the proper inquiry is whether "the State has provided an opportunity for full and fair litigation" of the claim.).

In *Chavez v. Weber*, 497 F.3d 796, 802 (8th Cir. 2007), the Court held that, to successfully challenge a state court's final resolution of a Fourth Amendment issue, a habeas petitioner must show that the state "provided no corrective procedures at all to address the alleged Fourth Amendment violation ... [or] provided a corrective mechanism, but was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."

In this case, the trial court provided May with a full and fair evidentiary hearing on his motion to suppress. May attended the hearing with his attorney, and the trial court heard evidence from Officer Taylor, who arrested May and later searched his truck.  Ms. Watkins cross-examined Officer Taylor, and May had the opportunity to testify, which he declined. *Id. at 93-146*.  After the hearing, the trial court denied May's motion to suppress. *Id. at 28*.  Later, Ms. Watkins filed a motion to reconsider, which the trial court also denied. *Id. at 34, 48*.  May then pursued a direct appeal of his conviction to the Arkansas Court of Appeals, where he again challenged the constitutionality of the search of his truck.  The Court rejected that claim and affirmed his conviction. *May*, 2016 Ark. App. 605, 509 S.W.3d.

Having been given a full and fair opportunity to litigate his Fourth Amendment claim in the state courts' of Arkansas, controlling federal case law bars this Court from considering that claim, which should be dismissed, with prejudice.

### D.    May's Claim That The Arkansas Court of Appeals Erred, In Its Application of State Law

May argues that the Arkansas Court of Appeals erred when it affirmed his conviction, without addressing *the merits* of the trial court's *unchallenged* alternative finding that the search of May's truck was constitutional.  Respondent argues this claim is not cognizable under § 2254 because May is challenging how the Arkansas Court of Appeals construed *state law*.

Federal habeas relief is only available to correct violations of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "'[F]ederal habeas corpus relief does not lie for errors of state law . . . [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" *Evanstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

On direct appeal, Mr. Dunagin did *not* challenge the trial court's alternative finding that, even if Officer Taylor's conduct in stopping and questioning May violated the Fourth Amendment, his subsequent discovery of an arrest warrant for May was an independent and intervening factor which led May to consent to the search of his truck.

The Arkansas Court of Appeals applied well-established state law to affirm May's conviction, *based on his failure to challenge the trial court's alternative finding*: "When an appellant fails to attack a circuit court's independent, alternative basis for its ruling, we will not reverse." *May*, 2016 Ark. App. 605, 4-5, 509 S.W.3d at 17 (citing *Barber v. State*, 2015 Ark. App. 120, at 5, 2015 WL 831231; *Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002)).

Finally, May complains that the Arkansas Court of Appeals erred in raising, *sua sponte*, the trial court's alternative finding as its basis for affirming May's conviction. *Doc. 3 at 12*. There is nothing *unconstitutional* about the Arkansas Court of Appeals' raising that issue and using it as the basis for affirming May's conviction, even though it was not raised by the parties in their Appellate Briefs.

May's challenge to the Arkansas Court of Appeals' *application of state law* to affirm his conviction on direct appeal does not state a cognizable claim for relief under § 2254. Accordingly, that claim should be dismissed, with prejudice.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.      All of the habeas claims asserted by May in his § 2254 habeas Petition be DENIED and this case be DISMISSED, WITH PREJUDICE.

2.      A Certificate of Appealability be DENIED. *See* 28 U.S.C. §

2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District

Courts.

DATED THIS 13th day of March, 2020.

_____
UNITED STATES MAGISTRATE JUDGE